23-3089 and 23-3142. Counsel for appellant, if you'd make your appearance and proceed, please. Good morning. May it please the court. I'm Jonathan Sternberg and I represent the appellant, True Mobility. As your honors know, the district court granted the defendant Briggs   summary judgment on my client's breach of contract claim. It held that the contract's 36-month term in which Briggs had to make minimum payments to my client began on the contract's execution rather than when my client activated the contracted services, and therefore Briggs terminating the contract's 36 months after execution wasn't early and they owed my client nothing. Your honors, holding that the 36-month term began on execution was error. This court should reverse the district court's judgments and remand this case for trial in the underlying factual disputes. The district court's reading of the instruments as stating that the term began on execution fails to address their plain language as a whole and reaches the absurd result that if read that way, my client could never recoup the 36 months of minimum payments to which Briggs agreed. To the contrary, the instrument's plain language actually read in their context as a whole provides that that 36-month term in which Briggs had to make minimum payments, minimum monthly payments, commenced at the start of my client's cyclical billing to Briggs once its services were activated and not on the agreement's execution. Your honors, these agreements were obviously intended to be a standard form of service contract, which requires Briggs to purchase my client's services for 36 months, pay a minimum amount each month, totaling at least, in this case, a little over $1.1 million, and if Briggs terminated before paying those 36 months, it owed the remainder. I can tell you from personal experience, this is the sort of thing that Westlaw requires of small law firms. I'm sure we've seen this sort of thing with cable TV companies. We cite a case from Florida, which of course is the law that governs here, called DSL versus Tiger Direct, where someone agreed to purchase a minimum amount of advertising from a magazine each month, and these work the same way. So each of these service agreements, there's three parts to this contract. There's three service agreements, there's an addendum that Briggs' agent wrote, and there's standard terms and conditions that my client requires of all of their customers, and all three of these comprise the agreement, when we talk about the agreement. But the service agreements themselves, here each state that Briggs, quote, shall purchase at least the monthly amount, quote, each month for a term of 36 months. The standard terms and conditions states that if Briggs terminated early, it, quote, shall pay 100% of the monthly fees for each month remaining. Now as I said before, the parties agree that Florida law controls here. It's in the pretrial order even. In Florida, as everywhere else I've seen in this country, shall is mandatory language. We cite a case in our reply brief called Allstate, in which they said for an insurance contract, when it specified that payments shall be made in a specific way, the Florida Supreme Court said that that meant the payments must or will be made that way. The question here then is when that 36 months in which Briggs must make these minimum payments to my client begins. The standard terms and conditions states that the contract's 36-month term began on the, quote, commencement date. Capital C, capital D is a defined term, and it's defined as, quote, the first day of the first bill cycle in which my client for mobility bills monthly recurring charges or usage charges. Counsel, I apologize for stopping you. Sure. The clock is not moving. Oh. I will trust you for when I begin. Just keep going. We'll figure it out. Sure. Anyway, as I was saying before, the question then is when that 36 months begins. And the contract, that is the standard terms and conditions, say that it begins on the, quote, commencement date. Capital C, capital D is a defined term, and that term is defined as, quote, the first day of the first bill cycle in which True Mobility bills monthly recurring charges or usage charges. But the standard terms and conditions, a couple pages later, actually a page later, provides that True Mobility only, quote, may begin invoicing Briggs in full for non-recurring and recurring charges on the later of the date the products or services are installed and made available or the first day of the first bill cycle after the effective date. This makes sense. Could I just jump in here? Yes, John. At contract execution, is it correct that Briggs was required to pay the first month's charges? Yes. So that's what the district court glommed on to in this contract. Okay. I just glommed on to myself, but I've got to follow up. Why aren't the first month's charges the same as monthly recurring charges? Sure. So first of all, the monthly recurring, so it's the first bill cycle in which True Mobility bills monthly recurring charges. The monthly recurring charges, so if you look at the, that's page 218, at the language in the addendum and creating that first month bill part. It says upon contract execution, equipment and first month charges are due and payable. No additional invoices will be submitted until the services at each location is up and live. Invoices will be issued as each location is activated. There's no cyclical billing. That's the problem here. So the first, that's not part of the first bill cycle. In fact, it's entirely outside of the first bill cycle. Where do the contracts define monthly recurring charges? It doesn't define monthly recurring charges. I'm using, as we argue in our briefs, we're just based on the plain language of what is a bill cycle? What is a recurring charge? This isn't a recurring charge. And in fact, in their brief, they say this isn't a recurring charge. Okay. So it's a non-recurring charge. But the commencement date does refer to monthly recurring charges. It's, yes. So the commencement date, though, there's a clause that precedes that. The first day of the first bill cycle in which True Mobility bills monthly recurring, in which we bill monthly recurring charges. That upfront payment, that advance fee, whatever we want to call it, is not part of a bill cycle in which we have billed them anything. It is simply an, it's something they have to pay upfront. And then it states, no additional invoices will be submitted. So logically, that can't be part of the bill cycle. Because by the plain language here, the point is that the contracts provide that once we set up the services, we will then bill Briggs in a cycle every month. That Briggs then has to pay us for the services. And only then would they be obligated to pay those monthly cyclical bills. Briggs then does this for 36 months and agrees to spend a minimum amount each month. So under these provisions, under the plain language, the 36-month term would begin once we began billing them cyclically for those recurring services. Otherwise, if you accept the district court's reading that this first upfront fee, whatever we're going to call it, the upfront first month's charges, is actually part of that cyclical billing, well, then it makes the point that Briggs has to pay my client a minimum fee for 36 months meaningless. True Mobility couldn't bill Briggs and receive payment under the contracts until it installed the services. Would your reading of the contracts result in multiple 36-month terms depending on activation of services? Each one might have a different date, that's correct. Well, and maybe even more because there are different locations where the services would be activated, right? That's entirely possible, and I think that's one of the factual disputes ultimately between the parties. Should that inform how to interpret these contracts, the idea of this sort of proliferation of 36-month terms? No, Your Honor, because they received the bills at that point. I mean, it's fairly straightforward. And in fact, we were able, it's on page 283 of the appendix, we have a damages chart that does exactly that. Now, they, of course, dispute some of this, and they say it shouldn't work that way. But that's a different dispute for a different day. First, we have to get past the term. And because we couldn't bill them and receive payment until we installed the services, and so if the 36-month term began, though, at the date of execution, even without invoices or billing, then the minimum payment for those 36 months could never have been recouped. That language that I quoted before, that they shall pay, they shall purchase at least the minimum amount each month for 36 months, effectively is meaningless. By the way, no one's arguing that the contracts are ambiguous. No, I don't think they are ambiguous. I think all parties agree with the district court on that, that it is not ambiguous. I mentioned that case before from Florida DSL. There was an issue in that case about ambiguity, and when I cited it in our brief, their response in their brief was, well, that was all about ambiguity. I didn't mean it for that. We are not saying that the agreements are ambiguous. Frankly, I think this is very plain language. And could it have been clearer? Could there have been one single agreement that laid this all out sharp? I don't think the parties disagree with that either. We wouldn't be here arguing in the Tenth Circuit if this was the clearest agreement in the entire world. But ambiguity is whether it's capable of two different meanings, and I don't think it is capable of two different meanings. Once again, we go back to what is the commencement date. It's a single term. That's what defines when the term of these agreements began. Now, I know that in their brief, and I think the district court may have been a bit confused about this too, there's an interchangeable use of effective date versus commencement date. So if you look at the provision of the standard terms and conditions, it talks about term. It says the term of the service agreements, these three contracts, is governed by the commencement date. But then it says the effective date of the agreement shall be the date they're signed. I think what that's meaning is that it's the standard terms and conditions that begin on the effective date, begin on signing, and then govern what happens next. I mean, one possibility was, you know, it took my client a while to install the services, and that's, of course, one of the disagreements that sparked the disagreements between the parties here. But let's say during that period, Briggs had terminated the agreements before we had installed the services. We would agree at that point that 36 months hadn't begun, and under the termination provision, instead of owing the, you know, all remaining months, they'd only owe $1,000. I mean, clearly these agreements contemplate that we wouldn't have installed these services until later. The point, though, is the effective date of the standard terms and conditions begins the date they're signed, but the commencement date of the 36-month term in which Briggs has to pay my client is the first day of the bill cycle in which we bill recurring charges or usage charges. That first month's date, the first month's upfront payment, wasn't that because it specifically provided no additional invoices will be submitted until the services of each location is up and live. Invoices will be issued as each location is activated. I think this is a fairly straightforward case at this point, Your Honors. We'll hear from the other side, and we'll see how straightforward it is. Certainly. I'm not asking you to leave yet unless you're ready to go. I mean, I think you've got a couple of minutes if you want to take... Are you saying... What I would like to do is reserve some time for rebuttal. I don't know how much time I actually have. Why don't we do that? Let me ask you one question before you do that. You make an absurd results argument. Did you make that argument in the district court? We didn't make that exact argument, no, and I agree that this could have been argued better in the district court, but I think it's good enough. Well, good enough, tell me where it's good enough because it looks like you didn't make it to me. Sure, so it's... In the opposition to the motion for summary judgment, pages 251 to 252 of the appendix, we argue that... Actually, it's 252 right here, so the second paragraph. The date alleged by Briggs, December 29th, 2019, is not correct because it disregards the actual dates when services began. And then previously in the pretrial order, which is I think pages 198 to... Sorry, pages 98 to 100 of the appendix, we said that the contract date began on the... It didn't begin on the date of execution either. It began when the services began. I don't know that we had to make a specific argument that said it was absurd results. We're simply arguing about the language of the agreements here.  Thank you. Thank you, Your Honor. Counsel. May it please the court. My name is Terry Iles. I'm representing Briggs Automotive Group. This really comes down to one simple question in how do we harmonize all the language in the contract to make a determination when the termination date is and whether or not it's actually supposed to be 36 months from the effective date. Not only that, but how do we harmonize it with the definition of commencement date? I think if we look at all the facts involved, and both counsel cited several, there is no dispute on the facts. One of the critical aspects of this entire contract was that 36-month term. This is a telecommunications system for a dealership. They needed to make sure this technology did not become obsolete. They needed to stay with the technology. In order to do that, this term had to end at 36 months. Everybody's in agreement with that. Everybody discussed that during negotiations. All the documents say that. Contract A and B and C say that, and also the addendum says that, critical to this entire decision in this case. If you look at the contracts, there are several of them that counsel does reference. First of all, Judge Matheson, to answer your question, the first month charge in the addendum is the monthly reoccurring charge, and I'm going to explain how that happens. But all these documents are a little different because we have A, B, and C, and also the addendum, that are specific to this transaction, that are specific to True Mobility, Briggs, and the 36 months. And then we have standard terms, conditions, that are rather particular to transactions involving True Mobility. Briggs didn't even mention it here. But we have to harmonize them all together. How do we do that? It's rather difficult, especially when some of these terms don't always mesh up a little bit. You have a term used in contracts A, B, and C. Minimum monthly charge. But it's not defined in the standard terms. It's not defined or used in the addendum. It's not used at all in those two documents. It is defined, Judge Matheson, and I'm going to explain to you, show you where it's defined. You also have terms like commencement date, effective date, products, certives, that are capitalized and defined in the standard terms. But those terms are not used anywhere in the addendum or A, B, and C. Nowhere in those documents. What I'm trying to get at is we have some inconsistencies between the documents, but they can be harmonized to demonstrate. And let me give you an example. If you go back to the definition under the addendum, paragraph 6, when it talks about the first month's payment due. Well, it says upon execution of the contract, and equipment for the first month's charges are due and payable to true mobility. Well, equipment's not used anywhere in the documents. But product is used in the standard terms. That's the only other explanation that could be, would be products. Because there's only two types of charges that could be done here. A charge for a product and a charge for a service. Only those two, because they're the only two that are addressed in the standard terms. As far as the types of charges, it is a recurring and a non-recurring charge. And those are addressed in the standard terms. Where I'm getting at is we have that paragraph 6 that uses language that is not necessarily defined anywhere else in the document. But what's critical about this is using the language about first month's charges. And that's where it gets us to the monthly reoccurring charge. If you look at either one of the A, B, or C contracts, and for example, contract A, if you go to this, it talks about a monthly, minimum monthly charge, okay? And it does not specifically define it like it does in the standard terms. But if you go to the second page of contract A, we see where it references minimum monthly charges. And it also references, toward the middle of the page, non-recurring charges, okay? So we can see from what is being added up on the right side of the page under minimum monthly charges that that dollar figure comes up to $10,205. That's the minimum monthly charge, what they intend to charge per month for the services provided for recurring charges. And then if you look down the last two items, those are dealing with non-recurring charges, which would be part services for installation and also product, okay? Non-recurring charges are not monthly charges. The only monthly charge is a recurring charge because that's how it's addressed in their document. If we look at the language in the addendum of the first month charges, there's two important words in that that help us understand that this is referencing and referring to a monthly recurring charge. One, upon contract execution, equipment, and first month's charges. The only charge per month is a recurring charge. And also the only charges are recurring and non-recurring. But non-recurring, which is product and installation, is not a monthly charge. That is how we get to this point that the contract, when that first payment was made, when the contract was executed, it was for a monthly recurring charge. That's how we get to the commencement date and the definition that's applied here. With that, I think the district court came to the proper determination in that Judge Robinson determined it started when the contract was signed. She also determined all payments were made by Briggs. Briggs provided proper notice in that the contract terminated 36 months. Let me ask this question, and I may have misunderstood opposing counsel, but this was what I took away in part from the argument, which was that if, in fact, the contract commenced and these were monthly recurring charges commenced at the time the contract was signed, these contracts were signed, some of the services were not ready to go online at that point, and Briggs was not required to pay until they did go online. If the 36-month clock started at the time that Briggs signed that agreement, then they really would not be able to be paid for 36 months because they are only paid when essentially they had done whatever work they needed to do so it would go live, creating this sort of dissonance because actually the 36 months, if the clock starts running, Briggs is not obligated to pay anything for a period of time when that 36 months is going on. I agree with that, Your Honor, and, in fact, it's the same thing as if it had started, but halfway through it they were unable to provide services and got shut down. They wouldn't have to pay for that month either, but the point is this took a lot longer than everybody anticipated to get up and going. There were a lot of problems in getting it going, but when we look at what the recurring charge was, it was billed and paid right out of the gate to start this contract ticking. But if it starts the contract ticking, but then there is a gap of time in which there are no additional payments. In other words, monthly recurring charges implies that there will be monthly payments, and if, in fact, they had not stood up whatever infrastructure was necessary for the services to be online, there wouldn't be monthly recurring payments because there wouldn't be any service to pay for. So I guess the point that at least I understood was if the parties contemplated that, yes, I want 36 months, I don't want technology to go beyond me, but True Mobility said, okay, but I want to get paid for 36 months. Well, under this scheme where the 36-month clock starts at execution, they are getting paid for 36 months because the services weren't ready in 36 months, and yet that 36-month period would elapse, right? But it's not a guaranteed 36-month payment contract. It's only a minimum monthly charge. That's the difference. But you're not paying minimum monthly charges for that entire 36-month period, are you? I don't disagree with that. That's because the services haven't been provided. But had those services went online from day one, then they would have been obligated under the contract to pay that from day one when those services were up and running. Nobody knew when those services were up and running. But if we go with that basic philosophy here that we need, and that is we need this thing to terminate within 36 months because of technology becoming obsolete, then this is more consistent than counsel's arguments now that we're at 54 months. And now we're beyond that technology. We're beyond the requirements and the understanding of what the parties needed here, which is it to terminate in 36 months. I think if you also look at counsel's argument, none of it correlates with any of the language in the addendum. It's strictly relying on the language in the standard terms and conditions, and that's inconsistent with Florida law where you need to harmonize all of these contracts together. It's difficult, I admit, because we can see how some of these terms that are defined in the standard terms and conditions, but they're not used anywhere else in these contract documents. But if we harmonize them. Can I just ask you to go back? Sure. You kind of walked us through. Okay. I need to go back. It takes a few times. On contract A. Yes, sir. Page 2. So you pointed out there that under description, you've got minimum monthly charges. Look at line total on the right side. Yeah, line total. It also says monthly recurring total. And then the signatures are for January 10, January 11, 2017. Correct. And Briggs, am I correct? Briggs was supposed to pay the first month. Upon executing, which is January 10. So was Briggs on the hook for this amount then? That's what we don't know, and that's what's not in the record, is what the amount was charged. They don't have documentation of what was paid. We don't have documentation of what was paid. But what we do know is the first month's charges were due. And because the month's charges are a minimum charge for the reoccurring charge, then we have to assume this is what was paid. So we're just working off the face of these documents, right? Right, exactly. Okay. This is a little different type question that I'm about to ask you. But if under your theory the contracts expired under your 36th month on January 10, and Briggs, maybe I'm wrong on this, but my understanding is Briggs paid through the end of December, December 29. Why wouldn't True Mobility still have money coming, even under your theory? I think what's not in the evidence, and this is not in the record, there was a couple additional months that had to go because it was not a transition that went as smooth and cut off right when they needed to. So we didn't even get into damages in this case. We were strictly about contract liability. So it's not in the record, but everything under your theory was paid. Under our theory, everything that was billed was paid to my client. The only thing in damages being requested is what's being in the future. Paid to your client? You mean paid by your client? Paid by my client, yes, from Briggs to True Mobility. Everything that was billed has been paid in full, with the exception of this later on billing. All of this talk about how Briggs was concerned about not being outdated by technology and the passage of technology and all of that, how did we know that? Where is that and how do we square that with the need to read the face of the contracts in determining what they say? In other words, the language and harmonizing that language as opposed to this external intent of Briggs. Well, I think we could look at the addendum and also look at the contract A, B, and C, and see that it specifically states 36-month term. I don't think there's any language in either one of those documents about the concern with obsolete equipment or technology or anything like that, but the parties are all in agreement with that. That was the reason for the 36-month term. In fact, Mr. Barnett even testified to that in his deposition, which is part of the record, the full deposition is.  Maybe let me just hear your response to this. Okay, that's the concern of Briggs. Well, the concern of true mobility, does the contract say whether the concern of true mobility must be paid for 36 months? No, I don't think it does. In fact, I think if we look at what the plain language of the contract does says is this 36 months that commences from the first payment of this reoccurring charge, and that was the first day that contract was signed, January 10th when that payment was made. Do you have anything else? No, thank you, counsel. We would request for the district court to be affirmed, Your Honor. I appreciate it. Thanks for your time. Things are a little confused, but let's go with two minutes. Mr. Riles began his argument by stating 36 months from the effective date. I think that's the problem here. The effective date is when standard terms and conditions begin. It's the commencement date that begins the 36-month term. Mr. Riles' argument also fails to give effect to the language defining the commencement date as the first bill cycle in which they bill monthly recurring charges. So even if that first month's upfront amount is a monthly recurring charge, and I accept that his reading of page 2 of, say, Contract A, but even if that were the case, it's still not part of a bill cycle. The bill cycle, the concern is, of course, when you have a contractor like my client, is getting paid. They wanted to be paid for 36 months. Mr. Riles argued that – You absolutely understood that. I think you stated it very well, Judge. Mr. Riles also said that minimum monthly charge is not defined. And I agree. There's no definition of minimum monthly charge in the contracts, and that's because there doesn't have to be. This is plain English. It says that they shall pay this minimum amount each month to my client for 36 months. That's the minimum monthly charge. It doesn't have to be defined any further than that. Mr. Riles suggests that because the word guarantee is not in this, that it's not – it doesn't work the way that I say it does. But the language shall in Florida is a guarantee. Shall means they must. They are agreeing. They are guaranteeing that they are going to pay us this amount for 36 months. And if we read it the way that they're saying, that could never be the case. The contracts also themselves do contemplate that there will be a time between execution and when we install the – when we activate the services. Seeing that I am out of time, if there are no further questions, I'd ask the Court to reverse and remand for trial on the underlying facts. Thank you, Counsel. Thank you, Your Honor. The case is submitted. We'll be in recess until 9 a.m. tomorrow.